May it please the court. My name is Justin Swidler and I represent a class of over-the-road truck drivers who sued Werner for violations of the minimum wage provisions of the Fair Labor Standards Act and the minimum wage provisions of the Nebraska Wage and Hour Act. Your Honors, this appeal presents a straightforward legal issue to be reviewed de novo after a grant of summary judgment by the District Court in Werner's favor and denial of our motion for summary judgment that requires a clear facial reading of the statutory language of the FLSA. The application and the correct construct of how to interpret such language has already been decided by this court in Acton v. City of Columbia. Specifically, pursuant to 29 U.S.C. section 207E2, quote, reasonable payments for traveling expenses or other expenses incurred by an employee in furtherance of his employer's interests and properly reimbursable by the employer, end quote, are exempted from the regular rate of the Fair Labor Standards Act. The Fair Labor Standards Act further provides under section 207H that all payments excluded under 207E are not applicable to the minimum wage requirements of the law. Now, we know that Werner did not pay minimum wage. It's undisputed. At Appendix 1291, you can review Mr. Bausch's pay stub for the week of July 23, 2012. The court will see that he was paid $39 in gross earnings for the work week, and at Appendix 1432, you can see that Werner calculated him to have worked 37.25 hours. Those are Werner's own business records. Now, you limit your argument here to payment of travel expenses, right? Traveling expenses and other, or other expenses, I suppose. No, no, travel expenses. If it's for other things beyond travel expenses, then your argument doesn't extend to that. Is that right? Well, Your Honor, to be clear, the Department of Labor has interpreted, as has the IRS, that travel expenses would include meal and incidental expenses incurred by individuals who are traveling and away from home overnight. And, in fact, every court to have ever considered meal and incidental expenses in the context of employees who are required to be away from home overnight has found that where those payments are reasonable and not disproportionately large, they are excluded from the regular rate. But if the stipend that is paid is for services rendered and not for travel expenses, then that argument doesn't apply, right? If the stipend that is paid is not for meal and incidental expenses, then our argument would not apply. Okay, thank you. That is correct. Thank you. Now, didn't your clients opt into this program where they receive the mileage payments in addition to the wage? Well, to clarify, there are two, there are two per diem programs. One is a daily rate, which is applicable to the trainee drivers. And one is a mileage rate that is applicable to the over-the-road drivers who pass the training program. It is a voluntary program. So you had an option, your clients had an option to receive straight wages versus the program they entered, is that right? That is correct. And the one they entered allowed them to get more total money? Well, by entering... Than the wages only program? No, they actually would get less money because they reduced the rates they provided to the drivers, not just in the taxable form, but in the total form they reduced the rates they paid to the drivers and then provided them in exchange for that reduction a reimbursement for their expenses. And so... Right, so if you add the two together, it's more than the wage amount. No, it's less. Less. It's less. So, for example, I think this is in the district court's opinion, you might have 27 cents per mile if you're not in the program, and then your total of the reimbursement and the non-reimbursement might be 25 cents per mile if you... But a chunk of it is not taxable. The amount is non-taxable. And the question... So on a net basis, your client does better by opting in. Well, there's... That wasn't at the incentive to opt in, that you get more total net... Well, that is how Werner... That is one of the ways Werner explained it to their drivers. Yeah. So now you're saying we got more from opting in, but we now want more on top of that because we didn't get paid enough wages. Well, your honors, it's not quite that simple, because the reality is what we know from the discovery in this case is that Werner did research and determined that drivers were incurring, because they were over the road, approximately $59 to $65 per day in deductible business expenses. We know that... And it's very interesting that this is the question coming from your honor, because this was initially the IRS's concern. So Werner gets audited on this program. Well, I know. Both sides are... Go ahead. Werner gets audited on this program, and one of the primary problems the IRS originally had was they said, we're going to compare the amount you're paying drivers who did not elect to participate in this program to the drivers who did. And they said, and because the amounts look similar, it must mean that you're paying these expenses and they're not reimbursable under the IRS code. And Werner's position, taken under oath at Appendix 923, is that that's a false test and it's a red herring, and it is in this case too, because the gross income eligible drivers receive that Werner pays... That Werner hires them to perform, and it says regardless of whether the driver elects to participate in the program, quote, contemplates and accounts for the deductible and non-deductible business expenses the taxpayer reasonably expects eligible drivers will incur. So what the discovery in this case revealed, in fact, is that the amounts Werner set had always included a reimbursement. The difference was whether it was being paid under an accountable or non-accountable plan. Now, the class in this case only includes the individuals who are actually in that accountable plan, but it's important to note that in all instances Werner contemplated for these expenses as they would have had to, because these drivers were actually incurring, based on the evidence, approximately $60 per day in these expenses. Counsel, under what was occurring, if you were a regular driver, not a trainee, you're being paid a certain amount per mile, is that correct? That is correct. And if you were away for days, and therefore with traveling expenses, did those drivers get reimbursed for those traveling expenses, or was that included in what they were compensated on a per mile basis? The ones who were in the plan? No, the ones who were just their line drivers, just the regular full-time drivers. Right. How were or were they compensated for traveling expenses? Well, according to Werner, they were provided a mileage rate which contemplated and accounted for those expenses. So it was included in the mileage rate? It was included in the rate. So when they start the program with trainees, rather than including it in the rate, they have a different way of compensating them for those expenses? That's right. For the trainees, they paid a per day rate to the trainees, which I think varied in the class period between $41 and $48 per day. For each day, they were required to be away from home, eating meals over the road. They paid that at a per day amount, not a mileage amount. Now, the regular drivers, were they taxed on the income that they received that included their traveling expenses? Had they not opted into the program, that would have been subject to taxation, but they could have declared it as a business expense at your end. That was up to the driver, though? It would have been the driver's effort to do. But under the trainee program, if they elected to accept the per diem, then the per diem was not taxable from inception. Is that correct? That's true. And so they were only taxed on the per mile? Well, one point of correction is the trainees were paid a salary on a per mile amount, but other than that, that would be correct. If you opted for the one program, you could stay in a motel and eat restaurant food and so forth. If you were on the other program, you decided to sleep in the truck and eat more modestly and so forth. You pocketed that difference, isn't that right? That is true. Under the regulatory language issued by the DOL, though, we know that, one, a reasonable approximation, this is under 217B3, reasonable or actual expenses that are reimbursed by an employer are not part of the regular rate. We cite the court to a decision in Mandelby DBA Mining Services, where the court was dealing with a situation where an employee claimed essentially he was paid a per diem, he was living away from home. He claimed to be especially frugal. Because he was frugal, he claimed that his per diem amount was disproportionately large. This was a normal type of FLSA case where the employee was challenging the per diem, not the employer trying to escape its own categorization of the payment. He was trying to increase his overtime rate, so he wanted the per diem to be put into his regular rate, which is generally how these cases play out. This really is an exception to the rule. And in that case, the court refused to review on a side-by-side accounting of the employee's actual expenses and the expenses that were reasonable. The reason was because of the policy problems of allowing employees, which the FLSA does, the ability to prospectively provide these reimbursable expenses, only then to get sued later because somebody either ate ramen noodles every day or slept on an air mattress instead of getting a hotel. And the court there said the most reasonable yardstick he could imagine to determine whether these payments were reasonable are the IRS's own guidelines to determine what a reasonable expensory reimbursement would be. It's also important to note, and this gets to that, this, it was actually this panel in AmTrust held that where you make statements to the IRS and they rely on those, there is quasi-judicial estoppel. It then becomes an issue which the defendant is bound to. At Appendix 2108, Warner told the IRS, quote, the fact that all eligible drivers actually incur deductible business expenses negates the conclusion that any driver will not incur these expenses. And the IRS accepted that finding at Appendix 1829, where the IRS finds in overturning the IRS, initial IRS decision, the IRS found the taxpayer, this is a quote, and it's at 1829, the taxpayer doesn't routinely pay reimbursement allowances to employees who have not incurred bona fide business expenses. Only actually incurred expenses are involved with the reimbursement amount. The defense Warner puts in here is the polar opposite of every statement they told the IRS under oath that these reimbursements were for expenses that these drivers were incurring because of their business with Warner. And the statutory language of the FLSA, again, is reasonable payments for traveling expenses incurred by an employee in furtherance of the employer's interest and properly reimbursable by the employer. We know they're properly reimbursable because the IRS found them to be. We know that they were expenses incurred by the employee because the entire factual record makes clear that these, Warner's own business records, in fact, make clear that these payments were for traveling expenses. And that is specifically why they were excludable from income under the IRS guidelines. That's why they were allowed to have an accountable plan. Counselor, you're in your rebuttal time. Oh, thank you. I'll reserve the rest of my time. Mr. Jones. Good afternoon, your honors. Joe Jones on behalf of Warner Enterprises, and we're asking this court to affirm the summary judgment entered by Judge Smithcamp in this case. This claim was brought on behalf of a class of over 52,000 Warner drivers who elected to participate in Warner's optional per diem plan. And they did that because they could take advantage of certain tax benefits offered by the IRS for accountable plans that allowed them more take-home pay, more pay in their pockets. And now they claim that, in addition to that, that those payments, those per diem payments should be, should not be considered as wages, and as a result, they weren't paid minimum wage. So the issue in this case is what is the true purpose of the per diem payments that were made? Is the true purpose to pay for work performed, or was the true purpose to reimburse for expenses incurred? And I thought, what about this problem that the company told the IRS the true purpose was expenses? That was the, one of the methods that the plaintiffs offered to try and prove the issue in this case that these per diem payments reasonably approximated actual expenses. What Judge Smithcamp did in addressing that was to say, for judicial estoppel to occur, there have to be inconsistent statements. And the judge ruled there were not inconsistent statements, first of all, because the standard under the IRS to determine whether payments should be, are taxable or not, is a different standard than the standard under the FLSA to determine whether these per diem payments should be considered wages. So the, part of the difference is that under the IRS accountable plan rules, it's a reasonable approximation of what the company expects the drivers may incur. Under the FLSA, it's what they actually incur. The court- So you're saying that the company told the IRS we reasonably expect that they will incur this amount of expenses, but now you're saying they didn't actually incur that amount of expenses. Yes, but in addition, Your Honor, what the court also noted is that the level of proof required at the IRS and the level of proof required in the federal court is very different. Well, if you're right about the difference in standards, would that mean that you're now stopped from going to the IRS and saying we reasonably expect these expenses in the future? Because you're now saying, in this case, it didn't turn out the way we reasonably expected. No, I think the standards are different. Our expectations may or may not be the same now as they were in 2003 when we put together the plan, but the basis for Werner's expectation was their discussions with three drivers and one manager. And they presented information based on hearsay, as Judge Smithkamp pointed out, hearsay discussions from with three drivers and one manager, and the IRS accepted that as a reasonable approximation of what's expected for purposes of the IRS. We get to federal court, and we have rules of evidence and a whole different burden under a different standard that the plaintiffs must meet here. So one, there is a difference, and the level of proof is also different. Well, I'm sure, to the average person on the street, why wouldn't this look like the company is having it both ways, and why should we allow that? Well, because it's similar to a cafeteria plan. People get the advantage of certain tax benefits that the IRS creates under a very specific set of rules, and those very specific set of rules that are present here under the accountable plan rules and regulations are different than what's under the FLSA. So we only get this benefit, or these drivers only receive this benefit, because the IRS creates this framework that's very specific to accountable plans. So how is it much of a benefit to a driver if the amount they're getting paid includes what they could also be expected to receive in terms of reimbursable costs, and that's somehow taken away from their wages? It looks like they're getting paid, but in essence, included in their pay is what they're going to have in expenses that could have been sought as reimbursement instead of as wages. There's an issue out there that isn't part of this case about whether... Excuse me. Go ahead. I'm sorry. I'm jumping ahead of you, but go ahead. Just stick with the microphone, if you would. It's easier to hear. If you're back and forth, we can't hear as well. Sorry. The issue in this case is not whether travel expenses incurred by over-the-road truck drivers are deductible or taxable or properly reimbursable. That's not the issue here. The issue here is whether the per diem payments should be included in wages, and the court correctly ruled that they shouldn't be because you have to look at the characteristics of those payments to determine whether those characteristics indicate that the true purpose of the per diem payments was to compensate for work performed, and all of the characteristics indicate that. Can you read 207E2, subparagraph 2? Why doesn't that clearly say that per diem should be excluded from their wage? Because as part of E2, it says that, and similar payments to an employee which are not made as compensation for his hours of employment. So the whole key here is, as this court stated in the Acton case, the test is, were the payments made for work performed? And that's what you have to look to, and then the courts have told us, and there's guidance from the Department of Labor that tells us whether these payments are payments for work performed. What the Department of Labor has told us in this very specific instance of whether per diem payments- But counsel, there's a semicolon that seems to, after which it seems like we're talking about something, payments made for occasional periods, and it gives those, that description through the remainder of that clause, and stops with, or similar clause, and then it seems to have another kind of thing, reasonable payments for traveling expenses, or other expenses incurred by an employee in the furtherance of his employer's interests, and properly reimbursable by the employer, or other similar payments to an employee. So that seems like if you're on the road, and you've got to spend the night somewhere before you can come home, that the meals you have that night in your lodging is reimbursable. Again, what I'd say to this is, this court addressed the issue of interpretation of 29 and said that the issue is whether the payments are made for work or not. And it says that at the top, in the body of 2070, it talks about- If you're sleeping the night, that's not for work. You have to look at what the purpose of the payment is, not what the drivers are doing, but was the per diem payment made for the purpose of compensating them, or was it made for something else? But it seems like the FSLAs, the wage and hour rules are saying, if you're giving them money for reimbursable expenses, that's not wages. That's not what they're saying. What this court has said in the Acton case is that if the payment is for compensation for work performed, then it's not payment as a reimbursable expense, and it must be included in the regular rate. Okay, so how do you decide whether it's payment for work performed? Is that based on how it's calculated? In this case, the judge got into whether it was done by the mileage. Yes. There's a variety of factors and characteristics that courts look at to determine whether the payment was compensation for work versus a true travel expense. One of the things they look to is the guidance provided by the Department of Labor in the payment, and it's specific to per diem payments, this very issue, the Department of Labor has said that if the per diem payment is based on the amount of work performed, and thus the total amount of the per diem paid varies with the amount of work performed, then that's a wage. That's a wage, and then if the driver incurs some, what we would normally call travel expenses while he's earning that wage, then what does he do about that? He can deduct wages beyond, I think when you're part of the per diem program, you have to work within the per diem program, and if you have deductible travel expenses in addition or in excess of the per diem amount, then those may also be deductible. What's slightly different here is it's not a dollar for dollar deal here. What the per diem program allows is not only is it non-taxable income, but it's also, it's not subject to employment tax, so there's no FICA taken out of it either, so when counsel says that, or they can do it at the end of the year, the people who don't participate in the program can just deduct them at the end of the year, it's not the same benefit. The benefit the IRS offers here under the accountable plan is greater than that, because employment taxes, FICA isn't taken out of the per diem amount, so not only is FICA not taken out, but then there's also no income tax withholding, so the tax benefit is greater. If you say that all of this is a wage, then the employee has to just pay for the hotel room or whatever out of his pocket, out of his wages, is that how it works? Yes, and to bring it into context here, these are over the road truck drivers that have to pay for the meals out of his wages, unless it goes over a certain amount, you're saying that he might be able to deduct it at the end of the year? Yes, and what happens in reality is that truckers like all of us have different eating habits and also different ways of providing for themselves when they're over the road, in terms of having a cooler and putting sandwiches in it, or various ways of providing so what Judge Beam may incur over the road driving may be a whole different expense than what Judge Colleton may incur over the road. When you get to this wage and hour context, it has to be actual and it has to be reasonable. What the courts have also said is that because under the FLSA they use the term employee and the expenses must reasonably approximate what's incurred, which means actually incurred, and for each employee, both the FLSA statute and the regulations under the statute both use the term employee, and employee is defined in the FLSA to be an individual. The Berry case in the Fifth Circuit, the Picton case of the Eastern District of Texas, both have said you can't do that on a group basis. So not only did the court properly find here that there was no dispute as to the characteristics of these payments, all the characteristics indicate it was a wage. When you look at the amount of the per diem, if you look at the total amount, 27 cents versus 28 cents, it's about the same whether you're in or out, so that's an indication that when you're adding the per diem to it, that's an indication that it's a wage. If you look at whether, okay, let's take the wage rate separate from the per diem amount. So in the example, it's 17 cents a mile. And so the Fifth Circuit in one of the cases, I think Gagnon case, talked about is it reasonable that a truck driver here would go to work for 17 cents a mile, and the answer is no. Why would he do that when he can get the regular rate at 28 cents a mile? And so when you look at those factors, that's an indication that the per diem rate is part of the compensation because when you add the per diem rate to the regular rate, the 10 cents and the 17 cents, you get to 27 cents, and that's generally what truckers are paid. The other characteristics are that it's paid in the same paycheck. There's no requirements here. They don't have to submit receipts or anything else. Yet when they have actual expenses that need to be reimbursed, such as tolls from toll roads or scale tickets or things like that, they have to submit receipts and they are reimbursed the specific amount on those receipts. Separate from their pay. Separate. Totally separate. And those payments are expense reimbursements not included in the wage. And both categories are paid by the mile, right? Yes, with the exception of the trainees or the student drivers. And the student drivers are paid, just generally speaking, whether they're in the plan or not, student drivers are paid by the day and then there's a true-up to make sure they're paid minimum wage if they have so many on-duty hours. And because they're paid that way regularly, that's also how the per diem was set up. They're paid a lump sum rather than by the mile. But other than that, for the trainees, all the characteristics of the payments are the same and they all indicate as a matter of law that these were wages, not expense reimbursements. Was that true-up process always a part of the plan? Yes, it's part of Werner generally. Whether you're in the plan or not, there's a true-up process to make sure that they receive minimum wage. So if I'm in the category that you're talking about and I eat my lunch while I'm still driving, I'm being paid by the mile, so that's more money in my pocket down the road. Isn't that right? Yes. Yes. Ultimately, there is more money if the drivers elect to participate in the per diem program. There is more take-home pay for them. Now, you say the trainees, you said it's by the day. What's by the day? The trainees are paid by the day or by the week. They're paid a flat sum. Because that's how they're paid generally, that's also how the per diem was set up. So the per diem payment for trainees is not by the mile. They're paid the same way they are paid their regular wages, which is by the day. Well, now, does that cut against counting it as a wage if it's by the day? It doesn't here. One, because there isn't the countervailing regulation or rule or guidance that says, there is the guidance that says, if they're paid by the hour, that indicates it's a wage. There isn't the countervailing that says, if it isn't, then it must be an expense. So what you look to are all the characteristics of the payment that all indicate here that it was a wage. You look at the amounts, the requirements, no receipts, all those things that the court went through, that courts around the country have gone through to establish whether it's a wage or not. Because some of the cases that we're dealing with aren't under an accountable plan. They're just a program that companies have set up. And so the per diem guidance from the Department of Labor in the field operation handbook may or may not be applicable. But here, all the characteristics indicate that they were wages, not true reimbursements for expenses incurred. All right. Thank you, Mr. Jones. Thank you, Your Honors. Mr. Swidler, your rebuttal. Thank you. This court in Acton stated, under 207, we consider only two factors. Quote, first, we must determine whether, and you're talking about sick leave buybacks there, but whether the payments at issue constitute remuneration for employment. And if so, then we must determine whether those payments are excluded nonetheless by one or more of the statutory exclusions. The test the court performed perhaps gets to the first question. It doesn't get to whether it qualifies under 207E2 as an expense reimbursement. It's also worth noting that the district court in this case reviewed cases which are very different. Because in this case, the employees are the ones who are standing by the employer's representations of what these payments were.  So even if Warner is not bound to those statements, which because they were submitted under oath to the IRS, they are. But even if they are not, they still constitute evidence to allow a fact finder to determine the purpose of these payments. We heard Warner get up and say that the purpose of these payments was for compensation. But according to what Warner explained to the drivers, which is specifically, and that's on appendix 1146, it specifically told the drivers that these payments were, quote, intended to cover your meals and incidental expenses while you were away from home, end quote. That's in their handbook explaining this. We know they admitted in a rule 36 admission, quote, the non-taxable portion, which is the per diem payment, approximates the expenses that Warner reasonably expects an employee will incur while away from home on business. We know they told the IRS at appendix 877 that the reasonableness of these payments would be evaluated each calendar year and that if they were determined to not be reasonable, they would be changed. Throughout each year, Warner increased the per diem amounts as the IRS allowed them to, demonstrating that they continually told the IRS these were reasonable payments, not just prospectively, but also retrospectively. Warner is trying to have it both ways here. Make no mistake about it. And it does not help the drivers. For example, when they reported the income of drivers to the Nebraska Unemployment Compensation Boards, which determined benefits to separated drivers, they didn't include the per diem amounts as compensation, even though the statute in Nebraska says that all amounts paid for remuneration for services should be included. In that situation, the per diem payments were not remuneration for services. They were expenses paid for traveling expenses. The undisputed factual record shows these payments squarely fit under section 2072. We respectfully request this court to reverse the district court, find that the payments made pursuant to the per diem plan constituted traveling expenses properly reimbursable by the employer, incurred by the employee in furtherance of the employer's interest, and such were exempt from the regular rate of the FLSA and remand for further proceedings. Thank you. Thank you, Mr. Swidler. The court thanks both counsel for the argument you provided to the court this morning, the committee will take the case under advisement.